THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CHARLES LEEKS, Defendant-Appellant.
First District (2nd Division)   No. 85—0767

Opinion filed April 29, 1986.

James J. Doherty, Public Defender, of Chicago (Judith A. Stewart, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Dean P. Karlos, and Loretta H. Davenport, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SCARIANO delivered the opinion of the court:

Defendant-appellant, Charles Leeks, was charged with dual counts of murder and single counts of armed violence and concealment of a homicidal death. He was tried without a jury and was ultimately adjudged guilty of the offenses of voluntary manslaughter and concealment of a homicidal death. Defendant was thereafter sentenced to concurrent terms of ten years and five years, respectively, on those convictions. He appeals the conviction and sentence on the voluntary-manslaughter conviction.

The facts are not substantially in dispute on appeal. At the time of the homicide, defendant was living with decedent, with whom he had a homosexual relationship. On the day of the offense, February 20, 1984, the defendant broached the subject of his moving out of Rosano's (the decedent's) apartment and taking one of his own. Rosano reacted angrily to this suggestion and restrained defendant when he attempted to leave Rosano's apartment. As a result, a fight between the two men ensued, moving from the living room into the bedroom. During the course of the fight, defendant grabbed an object off a nightstand and struck Rosano three or four times in the head with it. Rosano slumped to the floor, and defendant used the opportunity to flee the apartment. The blows proved to be fatal to Rosano, although in his confession defendant claimed that he was unaware of this fact when he fled.

Several hours later, defendant returned to the apartment. At that time, he found Rosano in the same position as when he had left, and he realized Rosano was dead. After remaining in the apartment for a while, defendant resolved to dispose of Rosano's body. To that end, he took the corpse to Rosano's car, put it in the trunk, and drove down to Georgia. There, he secreted the body in a wooded area. Defendant retained Rosano's car and credit cards, and he returned to the Chicago area. Defendant continued to use both the car and the credit cards until his arrest in Skokie on May 15, 1984.

After numerous stipulations, the trial court found that defendant had acted under some "provocation" when he struck Rosano, and as a result the court directed a verdict in defendant's favor on the murder charge. The court reserved judgment, however, on the in-

cluded offense of voluntary manslaughter. At the same time, the court directed a verdict in defendant's favor on the armed violence count.

Defendant elected to testify on his own behalf. Defendant stated that when he raised the subject of moving out and taking his own apartment, Rosano became enraged and told defendant that he (Rosano) was "really sick of your [Leeks] whining" about moving out. Rosano became abusive and told defendant:

> "there was no way [Rosano] would allow me to take an apartment of my own. He had heard this goddamn story before, he didn't want to hear it again, there should be no more of this. Something to that affect [sic], that I simply was not goint [sic] to leave the apartment."

The decedent's anger increased, and he eventually stated that "he would rather see [Leeks] dead before he would see [Leeks] out of the apartment." Rosano blocked Leeks' attempts to leave, and when the struggle moved into the bedroom, grabbed Leeks about the neck, and also bit him. Leeks then grabbed the object and struck the fatal blows. Leeks further testified that he feared Rosano intended to kill him rather than allow him to leave and that Rosano was about to do so when defendant struck him.

In rebuttal, the State recalled the officer who obtained defendant's confession, and the officer stated that defendant had not included some of the details he testified to at trial in his confession. Notably, defendant had not claimed that Rosano either screamed at him or that he became enraged or that Rosano stated that he would rather see defendant dead than allow him to move out. Defendant had also failed to mention that Rosano grabbed his neck or that Rosano hit him before defendant struck back. The court thereafter found defendant guilty of voluntary manslaughter.

At sentencing, it was noted that defendant had a prior theft charge on his record, for which he received supervision. The court pronounced sentence, and then stated:

> "[T]he Court will indicate that the Court does think that the defendant has some rehabilitative potential, for that matter, although he is going to have a stop being a thief if he is going to be a useful member of society, being an educated thief."

Defendant thereafter perfected this appeal.

On appeal, defendant raises two issues. First, he asserts that the evidence was insufficient to support a conviction for voluntary manslaughter in light of the directed verdict on the murder charge and

the court's findings of fact. Second, defendant contends that the trial court impermissibly considered a charge upon which defendant received only supervision in fashioning his sentence. We must reject both of defendant's contentions.

■ As to defendant's initial contention, defendant notes that the trial court directed a verdict in his favor on the murder charge, finding that there was sufficient provocation to mitigate the offense of murder down to the included offense of voluntary manslaughter. The defendant proceeds from this point to dispute the adequacy of the evidence of the mitigating facts and asks that this court reverse the conviction based on a purported inadequacy of that evidence. Phrased another way, defendant wants to eat his cake (have the charge reduced based on mitigating facts) and have it, too (have those mitigating facts found unsubstantiated). The fallacy of this position is patent.

The distinction between murder and voluntary manslaughter have vexed courts and juries alike with increasing frequency. Compare, *People v. Milner* (1984), 123 Ill. App. 3d 656, 463 N.E.2d 148, *appeal dismissed* (1984), 101 Ill. 2d 573, 469 N.E.2d 1067, with *People v. Hoffer* (1984), 122 Ill. App. 3d 13, 460 N.E.2d 824, *aff'd* (1985), 106 Ill. 2d 186, 478 N.E.2d 335. The difference between the offenses is found in the existence of one of two factors in the reduced offense: either defendant was acting under a sudden and intense passion borne of serious provocation, or he was acting under a subjectively held but unreasonable belief in self-defense. (Ill. Rev. Stat. 1983, ch. 38, pars. 9—2(a), (b).) In most situations, an offense is classified as a lesser included offense because the greater offense includes all the elements of the lesser offense plus an aggravating factor. (Ill. Rev. Stat. 1983, ch. 38, par. 2—9.) Here, however, voluntary manslaughter incongruously includes an element (the mitigating factor) not held by the greater offense. (See *People v. Hoffer* (1985), 106 Ill. 2d 186.) Indeed, it was the presence of a mitigating factor which led the trial court herein to direct a verdict in defendant's favor on the murder charge.

Defendant claims that the trial court's findings were inconsistent with a finding of sudden and intense passion, since the court explicitly found that there was no physical provocation involved. This factor, to be sure, is an essential element of that form of voluntary manslaughter, and it is incumbent on the State to establish that element beyond a reasonable doubt to sustain a conviction for that offense. (*People v. Fausz* (1983), 95 Ill. 2d 535, 449 N.E.2d 78.) Unfortunately for defendant, this argument is wholly irrelevant to this

case. Defendant was not convicted of voluntary manslaughter/sudden and intense passion; rather he was convicted of voluntary manslaughter/unreasonable belief in self-defense.

Apparently, the source of defendant's confusion was the trial court's use of the term "provocation" in directing a verdict on the murder charge. Defendant believes that because of this term, the court believed that he was acting under a sudden and intense passion, and assails the sufficiency of the evidence on that element. To the contrary, however, the trial court clearly was referring to provocation sufficient to trigger self-defense. This much is obvious from defendant's own closing argument, where he asserted that he was acting in self-defense. It is more clearly manifested in the trial court's observation:

> "[There is] actually no issue that's in dispute relative to this case, other than whether or not the killing was in self-defense."

This comment was made in the court's ultimate ruling on the case. Accordingly, defendant's argument assailing the adequacy of proof of sudden and intense passion must be rejected as irrelevant.

■ As to the charge on which defendant *was* convicted, defendant's entire argument consists of this statement:

> "Since the court found that there were no physical exchanges between Rosano and Leeks, Leeks could not have had an unreasonable belief in the need to use deadly force himself. The elements of voluntary manslaughter (unreasonable belief) were not proven and the conviction must be reversed."

Putting aside the conclusory nature of the argument, the reasonableness of an accused's belief is a question for the trier of fact, here the trial court. (*People v. Garcia* (1981), 103 Ill. App. 3d 779, 781, 432 N.E.2d 1234.) The court ruled adversely to defendant, and there certainly was a sufficient basis for this conclusion. Defendant's claim depended upon his credibility, which was undermined by his failure to include obviously significant facts in his confession. The trial court's factual finding should not be disturbed on review unless it is so unreasonable, improbable or unsatisfactory as to raise a reasonable doubt as to guilt. (*People v. Perez* (1981), 100 Ill. App. 3d 901, 427 N.E.2d 229.) Here, the trial court's findings were not so far afield as to be dispensed with in this forum; they do not give rise to a reasonable doubt of guilt.

■ The second issue raised addresses the propriety of using a charge upon which defendant received supervision at sentencing. It is true, as defendant asserts, that a charge which results only in a

term of supervision does not constitute a conviction. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—6—3.1(f); *People v. Schuning* (1985), 106 Ill. 2d 41, 476 N.E.2d 423.) It is equally true that a sentencing court's decision is not to be disturbed on review absent an abuse of its sentencing discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) Here, defendant posits that such an abuse can be found in the court's usage of a charge upon which he was not convicted at sentencing.

The flaws in the analysis are as follows. As stated in *People v. La Pointe* (1981), 88 Ill. 2d 482, 498, 431 N.E.2d 344:

> "Whether a defendant had been prosecuted and convicted for other misconduct, proof of which is offered at a sentencing hearing, is not, in our judgment, controlling as to its admissibility."

Conduct which has not resulted in a conviction is not *per se* barred from consideration in the fashioning of an appropriate sentence.

■ More important than the fact that a trial court may consider such material is the fact that defendant herein has not shown that the trial court did consider the prior theft charge in any event. The trial judge did not make the comment complained of until after he had pronounced sentence. The context of the reference clearly manifests that the court did not regard the supervision as aggravating. Most importantly, the trial judge only stated that defendant was an educated thief. This comment could easily be a reference to the fact that after killing Rosano, defendant covered up the offense and continued to use his credit cards and car. Since defendant has not shown that the trial court considered an improper item at sentencing, no abuse has been shown.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

BILANDIC, P.J., and HARTMAN, J., concur.