**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Muyideen Adewale ALARAPE,
Defendant–Appellant.**

**No. 91–2154.**

United States Court of Appeals,
Seventh Circuit.

Argued April 1, 1992.

Decided July 20, 1992.

Rehearing and Rehearing En Banc
Denied Sept. 23, 1992.

Barry R. Elden, Matthew M. Schneider, Asst. U.S. Atty., Mark S. Hersh (argued), Office of the U.S. Atty., Criminal Receiving, Appellate Div., Chicago, Ill., for U.S.

Robert A. Habib (argued), Chicago, Ill., for defendant-appellant.

Before CUMMINGS, CUDAHY, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

A customs inspector found 782 grams of heroin in two packages bound from Nigeria to the United States. One was addressed to Muyideen Adewale Alarape and the other to Anthony Williams, at the same address. A postal agent delivered the two, and Alarape, identifying himself as Williams, told the agent he had been expecting these packages and signed for both. Thirty minutes later a team of agents burst in with a warrant, finding the heroin from the two packages hidden in a closet, while the other contents of the packages were on Alarape's bed. A scale in the apartment had heroin residue. When talking with the officers Alarape used both his own name and the name Anthony Williams; he carried a social security card in the name Alarape and a telephone calling card in the name Williams. A jury convicted Alarape of importing, and possessing with intent to distribute, the heroin in both packages. 21 U.S.C. §§ 841(a)(1), 952(a). He was sentenced to 121 months' imprisonment, to be followed by four years' supervised release.

Alarape's defense was that he had no idea what was in the packages and had received one as an accommodation to Anthony Williams, an acquaintance. On opening the packages he found a mysterious powder, which he put out of reach until he could ask Williams about it. A jury could have found beyond a reasonable doubt, however, that Alarape knew what was in the packages and that Williams was his alias rather than a different person. Alarape carried a calling card with Williams' name; the phone service and cable TV service for his apartment also were in Williams' name; he identified himself to both postal and drug agents as Williams. He was unable to produce an "Anthony Williams" as a witness, saying he had no idea where Williams lived. The jury was entitled to treat Alarape and Williams as the same person and to find that Alarape knew what was in the parcels—not only because of the scale and his prompt separation of heroin from detritus, but also because people do not send thousands of dol-

lars of drugs through the mail without being paid in advance or having arrangements for payment later. See *United States v. White,* 888 F.2d 490, 494 (7th Cir.1989).

■ ■ Some of the evidence we have mentioned came from Alarape's own mouth. He spoke with agent Michael Koszola while other agents were searching and moved to suppress these statements, asserting that Koszola did not furnish *Miranda* warnings. This contention is embarrassed by a form he signed, acknowledging receipt of the warnings—which the form repeats. Alarape contends that agent Koszola obscured this advice while he signed the form and lied about giving warnings orally. Neither magistrate judge Guzman, who held the original hearing, nor district judge Bua, who held another, believed Alarape. True, officer Roland Thiede wrote "refused" on a consent form he carried, and counsel says that this means that Alarape asserted his right to remain silent. Yet Alarape never contended that Thiede tried to question him or even that Thiede was present when Koszola did so. Thiede testified that he jotted "refused" whenever he had not talked with a suspect. Judge Bua called this "incredible," which we interpret as "astonishing" rather than "untrue"—for the judge believed Thiede. Why a seasoned police officer would use "refused" to signify both his own failure to initiate interrogation and a suspect's refusal to talk eludes us; he could not explain why he would so confound matters. Still, the judge accepted both Thiede's explanation and Koszola's straightforward narrative; we are not entitled to upset his decision.

■ Thus we arrive at Alarape's only substantial contention: that the judge should have asked additional questions designed to root out prejudice and preconception among the jurors. One proposed question was: "The defendant is a Muslim from Nigeria; would this fact prejudice you at all?" Alarape did not suggest that jurors were apt to hold his national origin against him, and his religion was extraneous to any issue in the case, so the jury presumably would not learn it. A judge serves the interest of justice by keeping potentially distracting information under wraps. Questions about religion would have injected an unnecessary issue. So the court's decision not to ask this question promoted impartial administration of justice and could not have harmed Alarape—for the jury did not learn his religion until Alarape's lawyer gratuitously raised the subject during the direct examination of his client.

Two other proposed questions probed the jurors' willingness to believe law enforcement officials. They were:

> Will you believe the word of a government employee or agent or law enforcement agent automatically over the word of the defendant?
> Would you put more weight into the credibility of a government employee or agent as to that of the defendant?

Although phrased awkwardly, they let the judge know that Alarape wanted to inquire into a subject that could have led to challenges for cause or supplied information aiding in the exercise of peremptory challenges. *United States v. Martin,* 507 F.2d 428, 432 (7th Cir.1974), holds that a district judge should broach this subject with jurors when the credibility of public employees is "particularly important" to the case.

■ Although asking simple questions such as the ones Alarape proposed is the wiser course in many cases, whether it is an essential course depends on the degree to which veracity matters to the impending trial. A trial judge possesses substantial discretion in the voir dire. *Mu'Min v. Virginia,* —— U.S. ——, 111 S.Ct. 1899, 1904, 114 L.Ed.2d 493 (1991); *United States v. Moore,* 936 F.2d 1508, 1515 (7th Cir.1991); *United States v. Guy,* 924 F.2d 702, 708 (7th Cir.1991). That discretion was not abused in Alarape's case, for the case turned on inferences from uncontested facts—e.g., that Alarape signed for the packages and extracted the heroin, that he had a scale with drug residue—rather than on the outcome of a swearing contest. *Martin* does not hold that judges must disregard such considerations when deciding what questions to ask of prospective

jurors. Questioning here was appropriate to the occasion. Jurors need not recite a catechism before the trial can begin.

AFFIRMED

CUDAHY, Circuit Judge, dissenting.

Under *United States v. Martin*, 507 F.2d 428, 432 (7th Cir.1974), the district court's refusal to ask members of the jury whether they would believe government agents more than Alarape is grounds for automatic reversal. *Martin* ostensibly created a bright-line rule. The general question is whether "there is sufficient questioning to produce, in light of the factual situation involved in the particular trial, some basis for a reasonably knowledgeable exercise of the right to challenge." *United States v. Sababu*, 891 F.2d 1308, 1325 (7th Cir.1989). *Martin* holds that the question about believing government agents *is* necessary to a reasonably knowledgeable exercise of the right to challenge. Refusal to give such an instruction is an abuse of discretion.

It is true that the *Martin* panel referred to the factual circumstances before it in saying that the question was "particularly important." But what were those circumstances? The *Martin* court tells us: there were four witnesses for the government; three were government agents. *That* is the circumstance in which the question is important. Martin did not even take the stand to rebut what the government agents said. Contrast those circumstances to the facts in this case. *All* of the prosecution's witnesses were government agents, and Alarape took the stand to contradict them. Thus *Martin* is a bright-line rule that controls the outcome of this case.

I therefore respectfully dissent.