UNITED STATES of America, Plaintiff–Appellee,

v.

Ihuoma R. AMAECHI, Defendant–Appellant.

No. 92–1737.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 7, 1993.

Decided April 13, 1993.

---

Atty., Office of the United States Attorney, Chicago, IL, for plaintiff-appellee.

William T. Huyck (argued), Chicago, IL, for defendant-appellant.

Before CUMMINGS and KANNE, Circuit Judges, and EVANS, Chief District Judge.[*]

CUMMINGS, Circuit Judge.

On August 15, 1991, a suitcase arrived at John F. Kennedy Airport in New York from Lagos, Nigeria, addressed to one Doreen Bennett at the Children's Home and Aid Society in Joliet, Illinois. According to trial testimony, a letter and waybill attached to the outside of the suitcase indicated that it contained traditional Nigerian clothing sent to Bennett as thanks for a gift of bibles to the Elder Okezie, Christ Devian Church in Aba, Nigeria. A customs inspector at the airport opened the suitcase and found that it was indeed stuffed with clothes. However, the inspector smelled glue. He stripped away the inner shell of the suitcase to discover a plastic bag containing 431 grams of 91 percent pure heroin. It was stipulated at trial that this extraordinarily pure heroin, at $22,000 per ounce, was worth between $352,000 and $396,000. A day later another special agent flew to New York, picked up the suitcase and brought it to Chicago. He placed a radio transmitter inside the suitcase and exchanged the seized drugs with a similar package containing a less potent mixture of heroin. Four days later, posing as a delivery man, the agent dropped off the package to its addressee, Doreen Bennett, at the Children's Home. The radio transmitter went off ten minutes later, signaling that the suitcase had been opened, and agents entered the Children's Home where they discovered Bennett kneeling down in front of the open valise and beginning to peel back the lining.

Claiming to be ignorant of the illicit contents, Bennett agreed to cooperate with agents by delivering the suitcase to a friend: defendant Ihuoma R. Amaechi.

Terry M. Kinney, Asst. U.S. Atty. (argued), and Barry R. Elden, Asst. U.S.

[*] The Honorable Terence T. Evans, Chief Judge of the Eastern District of Wisconsin, is sitting by designation.

She said it was Amaechi who had asked her to receive the package in the first place. According to Bennett, a case manager at the Children's Home, Amaechi asked her on August 1, 1989 for her business address so that he could send her flowers—which she never received. On August 13 he called her, said he would be out of town, and asked if she would accept a package of clothing from his church. She agreed reluctantly but when the suitcase arrived she was disconcerted that it was addressed to her and that it was a valise rather than a package. Bennett was actually on the phone with Amaechi when the suitcase arrived. He was so anxious to get hold of it that he offered her $50 if she would cancel a hair appointment she had scheduled that evening—apparently Amaechi had not gone out of town—and he explained that he would lose a sale if he did not get the clothing quickly to the buyer. Bennett arranged to meet Amaechi that night at a bar appropriately called LaMirage. Followed by the federal agents with whom Bennett had agreed to cooperate, she met Amaechi at the bar; Amaechi of course asked for the suitcase and Bennett told him it was in her automobile. After a drink she drove Amaechi to his car, and after transferring the suitcase to the trunk of his car, defendant was arrested.

Amaechi was indicted for attempting to possess with intent to distribute 523.2 grams of heroin in violation of 21 U.S.C. § 846. This statute contemplates that a person convicted of attempting to commit a crime defined in the Drug Abuse Prevention Control Act is subject to the same penalties as those who succeed in committing the crime. In this case, knowing or intentional possession with intent to distribute an illicit or counterfeit substance violates 21 U.S.C. § 841(a).

Defendant's defense was that he was framed by a jealous half-brother named Vincent. Amaechi took the stand in his own behalf and testified that he had telephoned his family in Nigeria to have them send him traditional Nigerian outfits which he could then resell. He instructed his relatives to ship the clothes to Bennett. Amaechi offered telephone depositions from his wife, father and Vincent, the jealous half-brother. The father testified that he discovered Vincent's scheme to frame Ihuoma when Vincent gave him a note telling him of a special package he had sent to get the defendant in trouble. But the father admitted that he did not call to warn Ihuoma for several days. Vincent then testified and, presumably to prove what a bad person he is, told of stealing money from his family. The vengeful half-brother said that he paid an acquaintance to plant drugs in the suitcase so that Ihuoma would be arrested. However, Vincent's story suffered from several inconsistent or incredible statements: He could not remember the name of the person who put the drugs in the suitcase; he said the acquaintance got the drugs from travelers who just happened to abandon at least $350,000 in drugs at the airport when they entered Nigeria; he was confused about when he stole money from his family; he said that the church referred to in the letter to Bennett was fictional and that he had made up its phone number, but the number actually corresponded to a hotel in Nigeria called several times by the defendant; and Vincent claimed that he wanted to come to the United States and take responsibility for his crime but didn't have a passport, although he earlier said that he did have a passport. The biggest hole in Vincent's story, though, was why, if he was really trying to get his brother in trouble, he would have hidden the drugs so meticulously in the lining of the suitcase and then mailed them to someone other than Ihuoma. In fact, defendant's name was not on the suitcase at all. Vincent explained that he mailed the drugs to Bennett because he misplaced his brother's address; he simply saw her address for the first time and decided to mail her over $350,000 worth of drugs!

Ihuoma Amaechi was convicted after a jury trial and sentenced to 112 months in prison plus a life term of supervised release under 21 U.S.C. § 841(a). On appeal defendant does not attack the sufficiency of the evidence to support the guilty verdict but raises five alleged errors justifying

a new trial. The government has confessed error with respect to one of the five issues: the life term of supervised release. While we remand for resentencing on that issue, the balance of defendant's conviction must be affirmed.

■ First, Amaechi disputes Judge Hart's decision to impose a two-point enhancement under the sentencing guidelines because of defendant's leadership role in the conspiracy. Defendant opposes this enhancement on the ground that he was simply a courier or middleman. Absent a mistake of law, a trial judge's decision to enhance a sentence under the guidelines will be upheld unless the factual basis underlying the enhancement is clearly erroneous. *United States v. Thompson*, 944 F.2d 1331, 1348 (7th Cir.1991), certiorari denied, — U.S. ——, 112 S.Ct. 1177, 117 L.Ed.2d 422 *United States v. Brown*, 944 F.2d 1377, 1379–1380 (7th Cir.1991). First of all, the district court was correct in finding that there was at least one other "participant" within U.S.S.G. section 3B1.1, comment n. 1, because another person shipped the suitcase to Doreen Bennett at defendant's direction. It is of no import that this other participant has not been apprehended or convicted. U.S.S.G. § 3B1.1, comment n. 1. In this instance, it is reasonable to infer that someone would not have shipped "thousands of dollars of drugs through the mail without being paid in advance, or having arrangements for payment later." *United States v. Alarape*, 969 F.2d 349, 350–351 (7th Cir.1992). Next, we conclude that the judge was not clearly wrong in finding that defendant was an "Organizer, Leader, Manager, or Supervisor" within U.S.S.G. § 3B1.1, comment n. 3. This is a troubling case because, though defendant's participation in the conspiracy is clear, his role as a leader is not. Amaechi argues that the evidence establishes only that the drugs were to pass through his hands, not that he organized or led the conspiracy or even whether or how much he was to profit by the scheme. In other words, Amaechi asserts that he was only a middleman. "One's status as a middleman in a drug distribution chain does not, standing alone, make one a manager or supervisor."

*Thompson*, 944 F.2d at 1349. But there is enough circumstantial evidence suggesting that Amaechi played a central role such that the judge was justified in enhancing the sentence. For example, "control over others" indicates a leadership role under section 3B1.1, *Brown*, 944 F.2d at 1381, and Amaechi clearly controlled Bennett by eliciting her participation in the conspiracy and then giving her name to his cohorts in Nigeria. Nor are middlemen immune from sentencing enhancements under section 3B1.1. *United States v. Ramos*, 932 F.2d 611, 619 n. 20 (7th Cir.1991). The defendant ensnared Bennett in the illegal scheme, arranged that the shipment be directed to her, and then set up a meeting to transfer the heroin. Particularly persuasive is that during the period prior to shipment, Amaechi telephoned Nigeria seven times, including three calls on the day that the package was mailed. These factors are sufficient evidence that Amaechi was an Organizer, Leader, Manager or Supervisor.

■ Defendant next argues that the district court erred in permitting Richard Curry, a customs agent well experienced with the street value of heroin, to testify that the wholesale value of an ounce of heroin is $22,000 and that there were sixteen to eighteen ounces of heroin in the suitcase. Defendant's argument that the testimony was more prejudicial than probative under Federal Rule of Evidence 403 was not raised at trial and has been waived on appeal, *United States v. Wilson*, 966 F.2d 243, 245–246 (7th Cir.1992), and defendant's argument that the testimony was speculative and irrelevant is unpersuasive. A district court's decision to admit expert testimony will be reversed only upon a showing of clear abuse of discretion. *United States v. Foster*, 939 F.2d 445, 450 (7th Cir.1991). We have approved the use of expert testimony in narcotics cases, including prices and quantities. *United States v. Hughes*, 970 F.2d 227, 236 (7th Cir.1992). In this instance, Curry's testimony was relevant to prove defendant's intent to distribute under 21 U.S.C. § 841(A), the pertinent provision of the Drug Abuse Prevention and Control Act. *United States v. Valencia*, 907 F.2d

671, 678 (7th Cir.1990). Curry's testimony proves intent, an element of the crime Amaechi was charged with, for two reasons. First, we have held that one may infer an intent to distribute drugs, as opposed to an intent merely to consume drugs, based on their quantity and purity, *United States v. Douglas*, 874 F.2d 1145, 1154 (7th Cir.1989), certiorari denied, 493 U.S. 841, 110 S.Ct. 126, 107 L.Ed.2d 87; it does not seem at all unreasonable in this instance, for example, to conclude that Amaechi would not consume $350,000 worth of 91 percent pure heroin all by himself. Second, Amaechi's claim that he was framed by a jealous half-brother suffered under Curry's testimony about the purity of the heroin, because if a person's only intent is to frame the recipient of a package containing drugs, a smaller amount of less pure and less expensive heroin will do the same trick. Here the verdict showed that the jury concluded that defendant's half-brother Vincent did not really set out to frame Ihuoma, and the value of the drugs sent undoubtedly aided the jury in this conclusion.

█ Defendant also suggests that the court erred in excluding evidence of Doreen Bennett's conviction for shoplifting. Bennett pleaded guilty on April 19, 1989 in Cook County Circuit Court to stealing less than $150, a misdemeanor, and was sentenced to a three-month term of supervision. Federal Rule of Evidence 609 allows evidence of a witness's prior conviction for impeachment if, among other things, the punishment could have exceeded one year (Bennett's did not), or if the crime involves dishonesty or false statement no matter how long the sentence. It is difficult to see how this evidence prejudiced Amaechi since his defense was that he was framed by his half-brother; he did not dispute that he arranged with Bennett for her to receive a

package of clothing. Thus Bennett's credibility as a witness did not bolster or undermine Amaechi's story so much as it helped the authorities evaluate Bennett's claim to be ignorant of the contents of the suitcase. In any event, Illinois law clearly contemplates that a sentence of supervision does not constitute a conviction for evidentiary purposes. *People v. Schuning*, 106 Ill.2d 41, 86 Ill.Dec. 922, 925, 476 N.E.2d 423, 426 (1985); see also *People v. Leeks*, 143 Ill. App.3d 46, 97 Ill.Dec. 261, 264, 492 N.E.2d 920, 923 (1986). Since Bennett's shoplifting did not result in a conviction, it may not be admitted to attack her credibility under Rule 609(a)(2).

█ The government also urges us to adopt the reasoning of nine circuits that shoplifting is not a crime of dishonesty unless committed in a fraudulent or deceitful manner.[1] Shoplifting, of course, does involve dishonesty of a certain kind; the question is whether it involves the kind contemplated by Congress in drafting the Rules of Evidence—*i.e.*, whether it indicates that a person may be more likely to commit perjury. The calculus underlying this realm of evidence law—that people who lie in other contexts are more likely to perjure themselves than people who steal— is empirically questionable on a number of levels. Some people who falsify forms, for example, would stop short of committing the crime of perjury, while many thieves may be incorrigible liars. Yet the drafters of the Rules of Evidence explicitly intended that Rule 609 be limited to crimes involving "some element of misrepresentation or other indication of a propensity to lie and excluding those crimes which, bad though they are, do not carry with them a tinge of falsification." *Ortega*, 561 F.2d at 806. Having made the initial questionable assumption that some people are more given

---

1. A number of circuits have concluded that stealing is not a crime of dishonesty for purposes of the Rules of Evidence. See *United States v. Grandmont*, 680 F.2d 867, 871 (1st Cir.1982); *United States v. Hayes*, 553 F.2d 824, 827 (2d Cir.1977), certiorari denied, 434 U.S. 867, 98 S.Ct. 204, 54 L.Ed.2d 143; *Government of Virgin Islands v. Testamark*, 528 F.2d 742, 743 (3d Cir.1976); *United States v. Ashley*, 569 F.2d 975, 979 (5th Cir.1978), certiorari denied, 439 U.S. 853, 99 S.Ct. 163, 58 L.Ed.2d 159; *McHenry v. Chadwick*, 896 F.2d 184, 188 (6th Cir.1990); *United States v. Yeo*, 739 F.2d 385, 387 (8th Cir.1984); *United States v. Ortega*, 561 F.2d 803, 806 (9th Cir.1977); *United States v. Sellers*, 906 F.2d 597, 603 (11th Cir.1990); *United States v. Fearwell*, 595 F.2d 771, 776 (D.C.Cir.1978).

to perjury than others based on past conduct, we agree with nine other circuits that to include shoplifting as a crime of dishonesty would swallow the rule and allow any past crime to be admitted for impeachment purposes. Therefore, we hold that petty shoplifting does not in and of itself qualify as a crime of dishonesty under Rule 609.[2] The district judge correctly prohibited Amaechi's counsel from impeaching Bennett with her shoplifting conviction.

 Finally, the district judge permitted the United States to impeach Amaechi with misrepresentations he made on various immigration forms and tax returns. Federal Rule of Evidence 608(b) permits a litigant to bring out specific instances of the conduct of a witness to attack his credibility. Since defense counsel failed to object when Amaechi was confronted with these instances of untruthfulness, any error has been waived. *United States v. Wilson,* 966 F.2d at 246–247; see FED. R.EVID. 103. Moreover, defendant put his own credibility in issue by taking the stand, offering a series of character witnesses, and mounting a defense that he was framed. Having put his character in issue, a defendant may be cross-examined about instances of untruthfulness, although extrinsic evidence is inadmissible. See *United States v. Howard,* 774 F.2d 838, 845 (7th Cir.1985); *United States v. Senak,* 527 F.2d 129, 144 (7th Cir.1975), certiorari denied, 425 U.S. 907, 96 S.Ct. 1500, 47 L.Ed.2d 758. In this case, the government introduced no extrinsic evidence of Amaechi's false or fraudulent immigration and tax forms. The prosecutor accepted Amaechi's answers without introducing extrinsic evidence; indeed, the prosecutor did not need such evidence because defendant admitted that the forms were false.

As noted, the court sentenced Amaechi to 112 months' incarceration followed by a life term of supervised release. The pertinent Sentencing Guideline, U.S.S.G. section 5D1.2(a), provides for three to five years' supervised release or the minimum period required by the statute, whichever is greater. In this instance, 21 U.S.C. section 841(b)(1)(B) calls for a four-year term of supervised release. A life-long term of supervised release, therefore, represented an extraordinary, upward departure from the guidelines and required advance notice to the defendant. *Burns v. United States,* — U.S. ——, ——, 111 S.Ct. 2182, 2187, 115 L.Ed.2d 123 (1991). Both parties agree that neither notice nor adequate explanation was given by the district judge for this aspect of the sentence. Therefore, the case must be remanded to the district court for resentencing on the appropriate term of supervised release. On that occasion Judge Hart may give notice to the defendant of his intent to depart and the basis of the proposed departure, although we note that a life term of supervised release is extraordinary and not often warranted. See generally *United States v. Pico,* 966 F.2d 91 (2d Cir.1992).

The judgment is affirmed except for resentencing on the term of supervised release. The case is remanded for a proper determination of that issue.

---

**2.** Some forms of shoplifting—trying to walk off with a $500 jacket as opposed to a stick of gum—may not be "petty." We need not decide today whether all shoplifting is excludable under Rule 609.