UNITED STATES of America, Plaintiff–Appellee, Cross–Appellant,

v.

Gary L. OWENS, Defendant–Appellant, Cross–Appellee.

Nos. 97–3308, 97–3509.

United States Court of Appeals, Seventh Circuit.

Argued April 17, 1998.

Decided May 26, 1998.

K. Tate Chambers (argued), Gerard A. Brost, Office of U.S. Atty., Peoria, IL, for Plaintiff–Appellee.

George F. Taseff (argued), Office of the Federal Public Defender, Peoria, IL, Defendant–Appellant.

Before CUMMINGS, BAUER, and MANION, Circuit Judges.

BAUER, Circuit Judge.

Gary L. Owens was charged, tried, and convicted of possession of crack cocaine with intent to distribute. He argues that the evidence was insufficient to support the jury's verdict, that he should have been allowed to impeach the government's witness with evidence of a retail theft conviction, and that the prosecutor denied him a fair trial by vouching for the credibility of a confidential informant during the government's closing argument. The government cross-appeals, arguing that the district court improperly departed downward at sentencing based on extraordinary family circumstances. We affirm.

## BACKGROUND

On May 23, 1996, a federal grand jury returned an indictment against Owens, charging him with one count of possession with intent to distribute cocaine base (crack), in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). A jury trial was held on April 7, 1997, at which the government called two police witnesses, one civilian witness, and played a video deposition of a third police officer. The government also played a video tape and an audio tape of the drug deal in question.

The police were able to record the drug transaction because of their contacts with a confidential informant named Ramoun Johnson. Johnson agreed to cooperate with the government following his arrest by agents of the Federal Drug Task Force at his home in Peoria, Illinois, on November 3, 1995. Johnson provided agents with the names of eleven persons who he claimed were his suppliers of crack and other drugs, and agreed to assist the police in nabbing those suppliers. Owens was one of the names on Johnson's list.

On December 21, 1995, Officers Kirwan and Bainter prepared Johnson for an undercover cocaine buy at his home. They placed a body wire on Johnson and gave him money to buy cocaine. The agents left Johnson's residence and drove a block or so away to where they could monitor his conversations via the body wire. After the officers left, Johnson paged Owens and said he needed a half-ounce of crack cocaine. Owens agreed, and said he would be right over. Johnson notified the agents. Shortly after 3:00 p.m., Owens arrived at Johnson's house to deliver the cocaine. Johnson activated the camera before Owens arrived, and their transaction was captured on both video and audio tape. Johnson gave Owens $550 in exchange for the cocaine.

After Owens left, Johnson notified the agents that the transaction was over, put the video tape and the drugs into an envelope, and met the officers behind his house. Officer Bainter kept custody of the package, took it to the police department, performed a preliminary test of the substance which tested positive for the presence of cocaine, and processed the cocaine as evidence. Officer Bainter placed the cocaine in a plastic evidence sleeve, double-sealed it, and marked each seal with his initials and badge number. The cocaine was sent in this same condition to the Morton Crime Lab, where it was found to contain 10.8 grams of cocaine base. At trial, Officer Bainter identified Government Exhibit 1 as the substance and packaging he received from Johnson and testified that it was in the same sealed condition as when he received it from the laboratory.

After a one day jury trial, Owens was found guilty of distributing cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). On September 5, 1997, United States District Court Judge Joe B. McDade conducted a sentencing hearing. Owens raised three issues at his hearing: (1) whether there was reliable evidence to substantiate

the weight of the drugs as set out in the presentence report; (2) whether he was entitled to a reduction in his guideline computation for acceptance of responsibility; and (3) whether he should be awarded a downward departure based upon extraordinary family circumstances.

Judge McDade accepted Owens' first and third arguments. First, he found that the amount of cocaine base Owens delivered to Johnson was probably 4 to 5 ounces rather than the 5 to 6 ounces as testified to by Johnson. The judge reduced Owens' guideline range from level 34 (210 to 262 months) to level 32 (168 to 210 months).

Judge McDade then considered Owens' third argument that he presented extraordinary family circumstances sufficient to warrant a downward departure from the guideline range, under United States Sentencing Guideline ("U.S.S.G.") § 5H1.6. Owens offered the testimony of Patricia Waldrop, his "common law wife," [1] who has lived with Owens for over thirteen years. Waldrop and Owens have three children together, ages 6, 7, and 11. From 1985 until 1992, both Waldrop and Owens were on public assistance. They have never lived in public housing. For the past six years, Waldrop has been a cashier at a grocery store. For the past year, Owens has been employed by an upholstery company. He has supplemented his income by hauling materials with his truck and cutting yards. Owens maintains a good relationship with his children and, due to the flexibility of his work responsibilities, cares for the children after school and helps them with their homework. Owens also spends time every day with his brother who suffers from Downs Syndrome. Waldrop testified that if Owens went to jail, she thought she might have to move to public-assisted housing and receive welfare benefits.

In response to Owens' argument that his family circumstances were extraordinary and warranted a downward departure, the government pointed to Owens' past criminal history and his chronic drug use. After he was arrested for the instant offense, Owens turned in ten urine samples testing positive for marijuana.

Judge McDade found that Owens presented sufficient evidence to warrant a downward departure and sentenced him to 120 months in prison, the statutory minimum for the crime charged. The judge noted that Owens' situation differs from that of a typical crack dealer in that Owens takes an active role in raising his children and supporting his family. On appeal, Owens argues that: (1) the evidence was insufficient for the jury to find him guilty of distributing cocaine base; (2) the district court abused its discretion by refusing to allow him to impeach the credibility of a government witness with a prior misdemeanor conviction for retail theft; and (3) the prosecutor denied him a fair trial by improperly vouching for the credibility of the confidential informant during closing argument. The government also appeals Owens' sentence, arguing that the district court erred in departing downward in consideration of Owens' family circumstances.

## ANALYSIS

### A. Owens' Appeal

#### 1. Insufficiency of the evidence

■ Owens contends that the evidence adduced at trial was legally insufficient to prove him guilty of the offense of unlawful distribution of cocaine base in violation of 21 U.S.C. §§ 41(a)(1) and 841(b)(1)(B). Specifically, Owens argues that the substance contained in the bag that he is observed delivering to Johnson on the video tape is not the same substance contained in the bag that was produced at trial as Government Exhibit 1 and represented by Johnson to be the crack he purchased from Owens on December 21, 1995. Owens charges that a glaring disparity exists between the physical characteristics of the bag of crack as depicted on the video tape and the bag of crack produced in court. Johnson's testimony is therefore inherently incredible and Owens' conviction should be reversed.

■ We review a challenge to the sufficiency of the evidence in the light most favorable to the prosecution, and ask whether a

1. We note that Illinois does not recognize common law marriages.

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We will reverse a conviction only when the record is devoid of any evidence, regardless of how it is weighed, from which a jury could find guilt beyond a reasonable doubt. *United States v. Monigan,* 128 F.3d 609, 610–11 (7th Cir.1997).

■ To establish that Owens distributed crack cocaine, the government must prove that he intentionally distributed a substance known to him to be a controlled substance. *United States v. Thompson,* 76 F.3d 166, 169 (7th Cir.1996). A review of the record reveals that a rational jury could have found that Owens intentionally distributed a substance known to him to be a controlled substance. Specifically, the government presented sufficient evidence whereby the jury could have found that the crack cocaine depicted in the video tape was the same crack cocaine introduced as evidence at trial.

At trial, the government put Ramoun Johnson on the stand. Johnson testified that he paged Owens to set up the deal, that Owens returned the call, and that they arranged the deal. Johnson testified that Owens came to his house around 3:00 p.m., that he entered Johnson's house and delivered the crack to him. Johnson's testimony was corroborated by audio and video tape, both of which were played for the jury, and by the testimony of the officers surveilling the scene. The jury reviewed the video tape two times after they started deliberations and

■ found Owens guilty. We will not second-guess the jury on credibility determinations. *United States v. Nobles,* 69 F.3d 172, 187–88 (7th Cir.1995). Additionally, the government established a chain of custody for the cocaine. Accordingly we find that there was sufficient evidence to support Owens' conviction.

2. Impeaching evidence

■ Owens next contends that the district court abused its discretion in barring his counsel from impeaching Johnson's credibility with evidence of a prior conviction for theft. Owens' counsel made an oral motion in limine to determine whether he could impeach Johnson based on Johnson's conviction for stealing a car stereo worth less than $150. In 1990, Johnson pled guilty to misdemeanor retail theft and was sentenced to two years probation.

■ We review the district court's determination to admit or exclude evidence for purposes of impeaching credibility under an abuse of discretion standard. *United States v. Hernandez,* 106 F.3d 737, 740 (7th Cir. 1997). Rule 609(a)(2) of the Federal Rules of Evidence provides that for the purpose of attacking the credibility of a witness, evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment. In *United States v. Amaechi,* 991 F.2d 374 (7th Cir.), *cert. denied,* 508 U.S. 979, 113 S.Ct. 2980, 125 L.Ed.2d 677 (1993), we addressed whether a misdemeanor shoplifting conviction is a crime of dishonesty under Rule 609. We held in *Amaechi* that the district court did not err in excluding evidence of a witness's conviction for misdemeanor theft of less than $150 because petty shoplifting does not, in and of itself, qualify as a crime of dishonesty under Rule 609. *Id.* at 379. While we declined to hold that all shoplifting is excludable under Rule 609, we did qualify that there is a difference between stealing a $500 jacket and a pack of gum. *Id.* at 379 n. 2. We believe the district court acted within its discretion in excluding Johnson's conviction for theft. Owens had already impeached Johnson's credibility with a prior felony drug conviction and with the fact that Johnson had used marijuana while on bond. Impeachment with a misdemeanor theft conviction would have added little, if anything, to the impeachment attempt.

3. Prosecutor's closing remarks

■ Finally, Owens argues that he was denied due process of law and a fair trial because the prosecutor personally vouched for the credibility of Johnson during closing argument. Owens complains that the following discussion was improper:

[Prosecutor]: Packs [sic] with the devil, well I guess that's me then if I made a

pack [sic] with the devil. I guess [defense counsel] is talking about me, because I'm the one that entered into this plea agreement with Ramoun Johnson. That was me. And folks, if you don't like plea agreements with drug dealers, when we are trying to get to the drug dealer's source, then you can be mad, and you can be mad at me, because it's my fault because I'm the one that entered into this plea agreement with Ramoun Johnson. But I didn't just say Ramoun come in and tell us what you know, and don't worry about anything. When you read this plea agreement, you go back, Government Exhibit No. 9, I want you to pay careful attention. You can read it all. Pay careful attention to the provisions in paragraphs 23 and 24 and 25, because that is the crux of this plea agreement. And what this will tell you when you read it is what I said to Ramoun, "Ramoun, if you lie to me your deal is off." If you do one-

[Defense Counsel]: I'm going to object, Your Honor, that's not in evidence what he's talking about now.

[Prosecutor]: That's what the plea agreement says, Your Honor.

The Court: One minute, Mr. [Prosecutor]. I think the objection is well taken. The plea agreement will speak for itself. I don't think you should interject your personal position into this.

[Prosecutor]: Okay, ladies and gentlemen, look at the plea agreement and look what happens to Ramoun Johnson if he lies. Look at what happens to Ramoun Johnson if he doesn't tell the truth. And read it right here in black and white. If he lies, if he doesn't tell the truth, he loses the whole deal. That's quite a gamble. That's worse odds than if you go on the boat or you play the lottery. That's quite a gamble. One I submit to you is not reasonable that a person should take. Think about it.

■ We review a prosecutor's comments during closing argument to determine whether the comments were, in isolation, improper, and if so, whether the comments, in the context of the record as a whole, were so prejudicial as to deprive the defendant of a fair trial. *United States v. Granados,* 142 F.3d 1016, 1021 (7th Cir. 1998); *United States v. Whitaker,* 127 F.3d 595, 606 (7th Cir.1997).

■ We look to five factors to determine the effect on the fairness of the trial: (1) the nature and seriousness of the prosecutorial misconduct; (2) whether the conduct of the defense counsel invited the prosecutor's remarks; (3) whether the trial court's instructions to the jury were adequate; (4) whether the defense was able to counter the improper arguments through rebuttal; and (5) the weight of the evidence against the defendant. *Granados,* 142 F.3d 1016, 1021–22. Whether or not the prosecutor's comments in this case, looked at in isolation, were improper, we do not believe they deprived Owens of a fair trial or affected the outcome of the proceedings in light of the overwhelming evidence against him. The drug transaction was caught on both audio and video tape, and officers surveilled the scene. The jury evaluated the testimony of informant Johnson and the three officers, and reviewed the video and audio tapes. Additionally, Judge McDade took steps to limit any prejudicial impact of the statements. He sustained defense counsel's objection to the prosecutor's statements, and provided the jury with sufficient instructions, which we assume they followed. See *United States v. Richardson,* 130 F.3d 765, 779 (7th Cir.1997). We do not believe the prosecutor's remarks rendered the trial unfair.

### B. *Government's Cross–Appeal*

The government also appeals Owens' sentence, arguing that the district court abused its discretion in granting Owens' motion for a downward departure and sentencing him to a term of imprisonment below the applicable guideline range. The government claims that the defendant's family circumstances do not take his case out of the "heartland" of cases to which the guidelines were meant to apply.

■ We review the district court's decision to depart from the guidelines for an abuse of discretion. *Koon v. United States,* 518 U.S. 81, 116 S.Ct. 2035, 2046–48, 135 L.Ed.2d 392 (1996). A district court's deci-

sion to depart from the guidelines is "due substantial deference, for it embodies the traditional exercise of discretion by a sentencing court." *Id.* at 96–98, 116 S.Ct. at 2046. " 'District courts have an institutional advantage over appellate courts' in making sentencing determinations, and we accept the district court's findings of fact supporting a refusal to depart unless clearly erroneous." *United States v. Carter,* 122 F.3d 469, 472 (7th Cir.1997) (quoting Koon, 116 S.Ct. at 2047); see also *United States v. Otis,* 107 F.3d 487, 490 (7th Cir.1997).

This Circuit recognizes downward departures based upon extraordinary family circumstances. See *United States v. Canoy,* 38 F.3d 893, 906 (7th Cir.1994). In Canoy, we noted that a district court judge "may have a better feel for what is or is not unusual or extraordinary" and that "when a district court clearly explains the basis for its finding of an extraordinary family circumstance, that finding is entitled to considerable respect on appeal." *Id.* at 908. We therefore will not disturb Judge McDade's decision to depart from the recommended guideline range. The judge clearly articulated his reasons for departing from the guidelines, and stated on the record that Owens' situation presents atypical and extraordinary circumstances which warrant a departure. While this case may not present the most compelling set of facts necessary to warrant a downward departure, we will not second-guess Judge McDade's decision.

## CONCLUSION

For the reasons set forth above, we AF-FIRM the decision of the district court.