(No. 60554.-

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. TIMOTHY M. SCHUNING, Appellant.

*Opinion filed March 22, 1985.*

42

G. Joseph Weller, Deputy Defender, of the Office of the State Appellate Defender, of Elgin, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Mark L. Rotert and James V. Cinotto, Assistant Attorneys General, of counsel), for the People.

JUSTICE MILLER delivered the opinion of the court:

Following a jury trial in the circuit court of Du Page County, the defendant, Timothy M. Schuning, was convicted of rape and sentenced to seven years' imprisonment. The appellate court, with one justice dissenting, affirmed that judgment (125 Ill. App. 3d 808), and we allowed the defendant's petition for leave to appeal (94 Ill. 2d R. 315(a)). At trial the defendant admitted having sexual intercourse with the complaining witness on the occasion in question and asserted, as a defense, that the act was consensual; his credibility was impeached, however, through the introduction into evidence of two previous convictions, one for criminal trespass to a motor vehicle and the other for retail theft which resulted in a disposition of supervision, from which the defendant was later discharged. The defendant argues here, as he did in the appellate court, that his guilt of the offense of rape was not proved beyond a reasonable doubt and, alternatively, that a new trial is necessary because the earlier criminal dispositions were inappropriate bases for impeachment. The State now concedes that the impeachment was improper but argues that the error was harmless. We find that the improper impeachment prejudiced the defendant's right to a fair trial. Accordingly, we reverse the judgments of the courts below and remand the cause for a new trial.

Initially the defendant was charged with four offenses—rape, unlawful restraint, intimidation, and aggravated kidnaping—all based on an occurrence on October 7, 1982. The aggravated-kidnaping charge later was nol-prossed, and during trial the court directed a verdict in the defendant's favor on the charge of intimidation. The jury found the defendant guilty of the two remaining charges, rape and unlawful restraint. Because those of-

fenses were based on the same act, the trial judge entered judgment on only the more serious, rape, and the defendant was sentenced to seven years' imprisonment.

The complaining witness testified that at about 10 p.m. on October 6, 1982, she telephoned the defendant's house, in Lombard, where he lived with his parents. At that time she had known the defendant for more than two years and considered him a friend, though she had not seen him for several months. The defendant returned her call about an hour later and invited her over, meeting her on the way because she was on foot. The complainant believed that the defendant had been drinking. They walked to the defendant's house and went directly to the basement. The complainant testified that she did not see anyone else in the house at that time. The two sat on a couch, watching television, talking, and drinking beer; the complainant estimated that during this time she drank two or three cans of beer and the defendant drank three to five cans of beer. When the television program that they had been watching ended, they decided to go to a nearby store and buy something to eat. It was raining, however, so they returned to the basement instead.

The complainant testified that the defendant then began tickling her, which he had frequently done before. She told the defendant to stop, but he persisted. He then pushed the complainant into a supine position on the couch and sat on top of her. She struggled and told him to leave her alone. He bit her on the face, on her right cheek, and threatened to bite through her face if she screamed. While sitting on top of the complainant, the defendant turned around to undo her slacks; she removed a comb from the rear pocket of his trousers and scratched his back with it. The defendant then removed the complainant's slacks and underpants and, when he had lowered his own, lay on top of her, pinching her

breasts and biting her face, and had sexual intercourse with her.

The complainant then dressed and left. She walked some five or six blocks to the house of a friend, Dennis Phelps, and told him what had happened. Phelps took the complainant to a police station, and from there she was taken to a hospital.

The complainant testified that the occurrence produced marks on her face and chest and a scrape on her right knee. Also, she testified that she had believed that she and the defendant were the only persons in his house that night, though she thought that the defendant might have told her that his parents were home. The complainant had slept, alone, at the defendant's house a number of times, and she acknowledged having had a consensual act of sexual intercourse with the defendant once, when both of them were drunk.

Testimony was also provided by several persons who saw the complainant in the hours following the occurrence. Dennis Phelps testified that the complainant appeared at his house at about 1:30 a.m. on October 7. She was crying and her face was red, and she said that the defendant had raped her. According to Phelps, after some hesitation she allowed him to take her to the police. Two police officers and a nurse testified that the complainant had red, mouth-shaped marks on her face and that the skin was unbroken. The complainant exhibited an abrasion on a knee to one of the officers and to the nurse. According to the nurse, the complainant's underpants were the only article of her clothing that was torn, and the damage there appeared to be the result of normal wear and tear. Also, one of the police officers testified that several days after the occurrence the complainant showed him some bruises on her chest.

The defendant was arrested at home that afternoon. He was hiding behind the door of his bedroom, which

was in the basement. On the floor near the couch the arresting officers found the defendant's comb and the clasp of an earring, which the complainant said had been lost in her struggle with the defendant.

Ramona Schuning, the defendant's mother, testified in his behalf. She said that she was home during the time in question, that the basement couch was directly below her bedroom, and that the basement was not separated from the upstairs of the house by any doors. Mrs. Schuning testified that she was not awakened during the night and that her young granddaughter was present in the house that night.

The defendant also testified. He said that the complainant called him at about 10:30 p.m. on October 6 and that he returned the call about 30 or 45 minutes later. She asked whether she could come over, and he said that she could; the defendant denied that he met the complainant on her way. The defendant testified that he and the complainant watched television and drank beer for a while. Afterwards, he tickled her, and they lay on the couch and embraced. They removed each other's clothing and then had sexual intercourse. According to the defendant, the complainant did not say that she did not want to have sexual relations and did not attack him with a comb; the defendant denied threatening or biting the complainant. He explained that he hid from the police on October 7 because a previous encounter with the police had been unpleasant.

The defendant argues first that the evidence failed to establish his guilt of the offense of rape beyond a reasonable doubt. The defendant points out that the complainant did not initially implicate him at trial—at first she testified that nothing happened after the defendant began tickling her. Following a recess, when the complainant explained her embarrassment to the trial judge, she returned and described the occurrence. The defendant

also notes Phelps' testimony that the complainant expressed some reluctance in reporting the occurrence to the police. Moreover, the defendant argues that the complainant's own testimony shows that she did not cry out during the occurrence, that he was not armed and did not threaten her seriously, and that her injuries were minor.

The testimony of the complainant and of the witnesses who saw her in the hours immediately following the occurrence was sufficient to prove the defendant's guilt of the offense of rape. (See *People v. Secret* (1978), 72 Ill. 2d 371.) The complainant's testimony, if believed, would establish that she did not consent to the act of sexual intercourse. She reported the occurrence promptly to a friend and then later to the police; witnesses saw marks in the shape of a mouth on her face, corresponding to her description of the defendant's threats. From this record we cannot say that the evidence was legally insufficient.

Alternatively, the defendant argues that the State's improper impeachment of his credibility deprived him of a fair trial. Before trial the defendant made a motion *in limine* to prevent the State from introducing into evidence the dispositions of five offenses—criminal trespass to a motor vehicle, retail theft (under $150), battery, resisting a peace officer, and criminal damage to property (under $150)—for which he had been prosecuted previously. The trial court allowed the motion in part, permitting the State to introduce in rebuttal two conviction statements, one entered January 5, 1981, for the offense of criminal trespass to a motor vehicle, and the other entered June 27, 1980, for the offense of retail theft; with respect to the latter, the defendant had been placed on and discharged from supervision. Both judgments were from Du Page County. In closing argument the prosecutor urged the jury to consider the earlier convictions as

affecting the defendant's credibility, and the jury was instructed on that use of the evidence, receiving Illinois Pattern Jury Instruction, Criminal, No. 3.13 (2d ed. 1981).

The State now concedes that the impeachment was improper. Criminal trespass to a motor vehicle is a misdemeanor and does not involve dishonesty or false statement; therefore, under the rule adopted in *People v. Montgomery* (1971), 47 Ill. 2d 510, a conviction for that offense may not be used to impeach a witness' credibility. (*Knowles v. Panopoulos* (1977), 66 Ill. 2d 585.) Moreover, the successful completion of a period of supervision does not result in a conviction (*People v. Bushnell* (1984), 101 Ill. 2d 261; Ill. Rev. Stat. 1983, ch. 38, pars. 1005—1—21, 1005—6—3.1(f)) and therefore is not a proper basis for impeachment under *Montgomery*. *People v. Kavanaugh* (1980), 85 Ill. App. 3d 783.

The State contends that the error was harmless, however, in light of the properly admitted evidence here. Also, the State observes that the jury had some knowledge of the defendant's criminal history before the improper impeachment was introduced, for references were made in defense counsel's opening statement and in the defendant's testimony to his "scrapes" or "trouble" with the law. The State believes that the impeachment actually may have helped the defendant by explicitly defining to the jury the relatively minor nature of his earlier brushes with the law.

We find that the error was prejudicial, and we reject the State's analysis that the defendant invited the error or benefited from it. From the ruling on the motion *in limine* the defense knew, when it made the allusions to a criminal history, that the impeachment would occur. Moreover, the harm caused by that error is apparent. The defendant raised the defense of consent, and his credibility was crucial in that regard. The jury's essential

task here, as trier of fact, was to determine whose version of events to believe, and the evidence of defendant's record of criminal conduct, which the State now concedes was erroneously introduced, may have played an important part in that decision. Under the circumstances here, we cannot say that the improper impeachment did not prejudice the defendant's right to a fair trial. (See *People v. Stover* (1982), 89 Ill. 2d 189.) Therefore, we reverse the judgments of the courts below and remand the cause to the circuit court of Du Page County for a new trial.

*Judgments reversed;*
*cause remanded.*