THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
A. C. NORWOOD, Defendant-Appellant.
First District (5th Division)   No. 86—0572

Opinion filed December 4, 1987.

Paul P. Biebel, Jr., Public Defender, of Chicago (Alison Edwards, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Assistant State's Attorney, of counsel), for the People.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Following a jury trial, defendant, A. C. Norwood, was found guilty of criminal sexual assault and aggravated criminal sexual abuse and was sentenced to serve 12 years in the Department of Corrections. On appeal, he contends that he was denied a fair trial by the State's failure to produce before trial a note allegedly written by him to his daughter (complainant herein); that the court abused its discretion in denying him a continuance to have the note examined by a handwriting expert; that the court erred in denying his motion *in limine* to exclude evidence of his 14-year-old manslaughter conviction; that the court erred in admitting complainant's prior consistent statement and in ruling on various other questions of evidence; that the State engaged in improper cross-examination; and that his sentence was excessive.

Complainant, 14-year-old Latisha Norwood 1 of 11 children, testified that sometime between March 17 and March 25, 1985, her father, defendant, came into her bedroom while she was sleeping and put his fingers into her vagina. Upon awakening and seeing what her father was doing, she got out of bed and went into the bathroom, where she sat on the floor for 45 minutes. When she came out, defendant was downstairs sleeping. At the time of the incident, her sister Tammy and her 13-year-old nephew Ronnie were also sleeping in the same room. Neither awoke.

When Latisha went back to bed, she awakened Tammy but did not tell her what had happened. Two days later, she told a neighbor that her father had been "messing with her." The neighbor advised her to tell her sister (it is not clear which sister she was referring to) but the neighbor did not mention the complaint to any member of Latisha's family even though she often visited them. Latisha never

told her sister what had happened.

Latisha also testified that on September 3, 1985, her father gave her a hand-printed note which apparently contained an obscene message. (The note, the second one she had received from defendant, was not included in the record on appeal.) She took the note to her neighbor, who told her to find her sister. Latisha gave the note to her sister Laverne, who promised to do something but did nothing. Six days later, Latisha called the DCFS hotline and the police arrested defendant the next day. In court, Latisha identified the note, which Laverne had given to the police, and her father's printing.

On cross-examination, Latisha admitted that she could not accept family discipline, that she stayed out late and did not come home on time, that she did not pay attention to her parents or older sisters, disobeyed them and lied to them. On redirect, Latisha admitted further that she frequently lied but stated that she was telling the truth in court.

After he was arrested, defendant admitted that he had sexually molested his daughter and had written the note. He said that he had been under great pressure taking care of his large family since his wife had been hospitalized for a stroke in January 1985 and that he had been drinking when the act occurred. He said that he was sorry about what had happened and that he needed help. Defendant signed a written summary of the interview prepared by an assistant State's Attorney.

At trial, defendant denied that he had touched his daughter or had written the note. According to defendant, the arresting officers took him to the police station for questioning and told him that it would take only a few minutes. Once there, they told him that his daughter had filed a complaint against him but they did not specify the nature of the complaint. Instead, they asked him if he had "a problem." Defendant told them that since his wife's stroke, he had been under a great deal of stress and pressure working and caring for his 11 children. Defendant admitted that he had a problem but explained at trial that he had been referring to a drinking problem, not a sexual one. Defendant stated that Latisha was the only one of his children who "didn't want to mind" and often violated his curfew.

Defendant testified further that one officer told him that he was going to prepare a statement for him to sign and that if he signed it, he could go home the next morning and a judge would refer him for counselling or other help if he needed it. Defendant signed the statement without reading it. He was then shown the note, which he denied writing. On cross-examination, however, defendant admitted that

he had told the police that he had written the note.

After the denial of his motion *in limine* to exclude evidence as to his 14-year-old manslaughter conviction, defendant testified on direct examination that he had been convicted of involuntary manslaughter upon a plea of guilty in May 1974, and had been imprisoned in the penitentiary until he was paroled in September 1974. The presentence investigation report discloses that in December 1971, defendant pleaded guilty to voluntary manslaughter and was sentenced to serve an indeterminate term of three to nine years. He was paroled in September 1974 and discharged in October 1976.

Two of defendant's other daughters, Laverne Norwood Powell and Jackie Norwood, testified that the note Latisha identified in court was not printed by defendant. Laverne added that the note was not the one that she gave to the police. Laverne stated that the day before defendant's arrest, Latisha handed her a note which she said defendant had given to her. Laverne told Latisha that it looked "like a kid's handwriting" and asked her who had written it but she did not respond.

On rebuttal, a police officer testified that defendant was shown the printed note before his oral statement was taken and that after the written summary of the interview was prepared, it was handed to defendant, who appeared to read it before signing it. The officer denied that any promises were made to defendant to obtain the statement.

Defendant has raised numerous arguments on appeal. Upon our review of the record, we believe that the third issue is dispositive. Defendant, as we have noted, contends that the trial court erred in denying his motion *in limine* to bar the State from introducing into evidence his 14-year-old voluntary manslaughter conviction to impeach his credibility. We agree.

■ Under the rule adopted in *People v. Montgomery* (1971), 42 Ill. 2d 510, 268 N.E.2d 695, evidence that a witness has been convicted of a crime is not admissible for impeachment purposes if a period of more than 10 years has elapsed since the date of conviction or of the release of the witness from confinement, whichever is the later date. Defendant pleaded guilty to the offense of voluntary manslaughter in 1971, was sentenced to serve a term of three to nine years in the Department of Corrections, was paroled in September 1974 and was discharged from parole in October 1976. His trial commenced on January 23, 1986.

■ In denying the motion *in limine*, the trial court ruled that the manslaughter conviction was admissible under *Montgomery* because

defendant was discharged from parole less than 10 years before trial began and could have been required to serve additional time in the Department of Corrections if he had violated his parole. This ruling was in error, as the State concedes on appeal.

In *People v. Yost* (1980), 78 Ill. 2d 292, 399 N.E.2d 1283, the supreme court held that the expiration date of a witness' parole period is not a consideration in determining when the time requirements for admissibility have been met. Confinement is defined as actual imprisonment. (78 Ill. 2d at 294-97. See also *People v. Warmack* (1980), 83 Ill. 2d 112, 123-24, 413 N.E.2d 1254.) Since defendant was released from confinement more than 10 years before trial, his conviction could not be used to impeach his credibility.[1]

We are unable to accept the State's argument that the court's error in denying the motion *in limine* was harmless since we do not believe that the evidence against defendant fairly may be characterized as "overwhelming." Defendant denied that he had sexually molested his daughter. His convictions were based upon the testimony of his daughter, who admitted that she frequently lied and resisted her parents' authority, and upon an admission which he denied making. In the context of the case, evidence that defendant had been convicted of a felony involving the taking of a life may have played an important, even crucial, part in the jury's evaluation of his credibility, as the State conceded at oral argument. That possibility requires that defendant be given a new trial. (See *People v. Schuning* (1985), 106 Ill. 2d 41, 48-49, 476 N.E.2d 423.) This disposition makes it unnecessary to address defendant's other assignments of error, which are unlikely to recur on retrial.[2]

Reversed and remanded.

LORENZ and MURRAY, JJ., concur.

---

[1]Defendant correctly states that under *People v. Spates* (1979), 77 Ill. 2d 193, 199-200, 395 N.E.2d 563, the fact that the defendant anticipates disclosure and brings the matter out himself on direct examination in an effort to reduce the prejudicial effect of the evidence on his credibility after his motion *in limine* has been denied does not constitute waiver of the error.

[2]Whether Latisha's statement to her neighbor that her father had been "messing with her" should, if offered, be admitted on retrial either as a spontaneous declaration or a corroborative complaint cannot be determined by reference to the trial record which is now before us. The general principles which should guide the court in a new trial may be found in *People v. Damen* (1963), 28 Ill. 2d 464, 193 N.E.2d 25.