**Jeffrey HVORCIK, Plaintiff,**

v.

**Michael SHEAHAN, et al., Defendants.**

**No. 92 C 7329.**

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 7, 1994.

---

Thomas G. Morrissey, Chicago, IL, for plaintiff.

Robert D. Quinlivan, Chicago, IL, for defendants.

**MEMORANDUM OPINION AND ORDER**

SHADUR, Senior District Judge.

Sheriff Michael Sheahan seeks dismissal of a portion of the Fourth Amended Complaint ("FAC") in this class action, a pleading that seeks (1) to add named plaintiffs (including Scott Zuziak, "Zuziak"), (2) to include a prayer for injunctive relief and (3) to extend the class period in light of the Sheriff's failure to address the problems that first triggered this lawsuit. For the reasons stated in this memorandum opinion and order, Sheriff Sheahan's motion—which specifically targets FAC Count I, the claim that asks for injunctive relief—is denied.

From the very beginning the plaintiff class has claimed that the Sheriff has infringed the constitutional rights of its members—that his inaction in failing to take certain obvious and readily available steps to minimize the known presence of many invalid warrants in his computerized record system violates the constitutional standard of "deliberate indifference." This Court's March 24, 1994 memorandum opinion and order (the "Opinion," 847 F.Supp. 1414 [1]) granted summary judgment as to liability in favor of the plaintiff class, explaining in detail why the class claims were viable under Section 1983.[2]

Because it appears that the Sheriff has inexplicably continued to ignore the obvious and readily available curative measures referred to in the Opinion—measures whose very obviousness and availability contributed to the Opinion's "deliberate indifference" holding (Opinion at 1419–23) [3]—plaintiffs'

---

1. Citations to the Opinion will take the form "Opinion at —," referring to the page number but omitting the volume number in F.Supp.

2. Despite rejecting Sheriff Sheahan's attempted Eleventh Amendment immunity defense against two very similar individual claims in *Ruehman v. Sheahan*, 34 F.3d 525 (7th Cir.1994), Judge Easterbrook's opinion for the Court of Appeals' panel expressed considerable skepticism as to the ability of the individual plaintiffs to prove greater culpability than mere negligence (nonactionable under Section 1983) on the part of the Sheriff (*id.* at 528). But the Court of Appeals had before it only the less-than-complete presentation that is necessarily involved in dealing with a motion to dismiss, while by contrast this Court has been presented with the total picture (a full-blown factual record, tendered on cross-motions for summary judgment) as well as the parties' arguments to serve as the basis for the Opinion. Under the circumstances this Court does not view *Ruehman* as calling for any retreat from the Opinion's holding.

3. Indeed, even if the Sheriff were not confronting potential liability under Section 1983, it is really incomprehensible that a responsible public official would not take every reasonable step to prevent the unlawful arrest and unlawful detention of people on warrants that had previously been recalled (quashed) by the courts. It is particularly incomprehensible when those steps

counsel sought to file the FAC. Between the date on which the notice of that proposed pleading was served on the Sheriff's counsel and this Court and the necessarily later date on which the notice stated that it was to be presented for consideration by this Court, counsel for Sheriff Sheahan caused the warrant against the newly named plaintiff Zuziak to be quashed (as it should have been more than two years earlier, but was not because of the Sheriff's delinquency). Then the Sheriff's counsel sought to use that action on his part as a springboard to urge the claimed absence of a case or controversy as the basis for defeating any effort to bring the FAC, and particularly its Count I, before this Court.

This Court promptly expressed itself orally that such a stance on the Sheriff's part could not be tolerated. In exactly the same way, courts regularly reject the efforts of class-action defendants to pay off or otherwise to satisfy the individual claims of named plaintiffs in an effort to oust the courts of jurisdiction over the class action—a process of "picking off" the plaintiffs on a one-by-one basis. Both in the Opinion and during hearings in this case, this Court has constantly emphasized the case law that teaches "that once a class has been certified it acquires an existence separate and apart from that of the individual named plaintiffs, so that the failure of the latters' individual claims does not impair the class' entitlement to relief (*United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397–401, 100 S.Ct. 1202, 1209–1211, 63 L.Ed.2d 479 (1980); *Sosna v. Iowa*, 419 U.S. 393, 399–403 [95 S.Ct. 553, 557–559, 42 L.Ed.2d 532] (1975))" (Opinion at 1425).

■ Unsuccessful in that effort to torpedo FAC Count I, the Sheriff's counsel seeks to dismiss the proposed claim for injunctive relief by pointing to *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) and *O'Shea v. Littleton*,

414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) as establishing the absence of an Article III case or controversy such as to justify equitable relief. Those cases, says Sheriff Sheahan, bar any potential for forcing him to cure the endemic problems identified in the Opinion. Under those opinions, the speculative nature of any potential future entanglements with the criminal law system on the part of the plaintiffs has been held to negate the required Article III standing for obtaining injunctive relief.

Although *O'Shea* had been instituted as a class action (*Lyons* was not), neither *O'Shea* nor *Lyons* involved an already certified class. To this Court it seemed that fact, together with other factors discussed later in this opinion, might amount to material differences calling for a different legal conclusion, though neither party had adduced any case law addressing that possibility. It seemed entirely conceivable that although no *specific* individual might be able to demonstrate the likelihood that he or she would sustain future damages as the result of an invalid warrant remaining in the Sheriff's computer system as a seemingly live warrant, the fact (combined with the future probability) that one or more members of an entire class are thus placed in actual peril would appear to bulk much larger.

In any event, this Court sent counsel for the litigants back to the books for further enlightenment on the matter. In response to this Court's request, counsel for Sheriff Sheahan has filed a supplemental memorandum by which he intends to show that *O'Shea* is still alive and well and living in the Seventh Circuit.[4] Although this Court had posed that inquiry in the *class* action context, virtually every case cited on the Sheriff's behalf involved *individual* claims[5]: *Holstein v. City of Chicago*, 29 F.3d 1145 (7th Cir. 1994); *Smith v. Wisconsin Dep't of Agric.*, 23 F.3d 1134, 1141 (1994); *Stewart v. McGinnis*,

---

are neither complex nor expensive, and when Fed.R.Evid. 407 would protect the Sheriff against plaintiffs' use of those steps to help prove the Sheriff's prior culpable conduct.

4. Plaintiffs' counsel has also submitted a supplemental memorandum, but it adduced nothing bearing directly on the matters discussed here.

5. Those cases are cited here in the traditional sequence—inverse chronological order—rather than in the order that the supplement by Sheriff's counsel deals with them (presumably reflecting his sense of their importance to the issue at hand).

5 F.3d 1031, 1038 (7th Cir.1993); *Knox v. Mcginnis,* 998 F.2d 1405, 1413–14 (7th Cir. 1993); *Feit v. Ward,* 886 F.2d 848, 857–58 (7th Cir.1989); and some more tangential cases that counsel characterizes by a "see also" label. Indeed, Sheriff Supp.Mem. 3–4 acknowledges that the plaintiff in *Holstein* had sought to file a class action but had not yet moved for class certification—so that Supp.Mem. 4 says:

> Consequently, the class action exception to the mootness doctrine was not available to him.

As for post-*O'Shea* class actions, however, Sheriff Sheahan points only to *Palmer v. City of Chicago,* 755 F.2d 560 (7th Cir.1985). But there the Article III case or controversy requirement was found unsatisfied because *no* member of the plaintiff class had actually been deprived of his or her constitutional rights by the complained-of unconstitutional practice of withholding exculpatory evidence (*id.* at 571). It was in that context that *Palmer, id.* at 570 quoted (and added emphasis to) this passage from *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 40 n. 20, 96 S.Ct. 1917, 1925 n. 20, 48 L.Ed.2d 450 (1976):

> *That a suit may be a class action ... adds nothing to the question of standing,* for even named plaintiffs who represent a class "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."

■ But that issue is not involved here at all, for the real clincher in that respect is that further criminal activity (or even asserted criminal activity) on the part of a class member is not at all necessary for the peril posed by the Sheriff's unconstitutional conduct to be converted into reality. Zuziak's own case provides a dramatic illustration. Two days after an arrest warrant on a misdemeanor charge had been issued (on June 9,

1992, FAC ¶ 22) Zuziak turned himself in and was released on an I-bond, so that the state court judge issued an order recalling (quashing) the warrant (*id.* ¶ 23 and Ex. B).[6] Thus the presence of readily available and proper procedures in the Sheriff's computer system should have eliminated Zuziak's warrant from that system shortly after June 1992. It did not—because no such procedures had been adopted the warrant was still there, improperly reflected as an outstanding warrant for Zuziak's arrest, more than a year later (as already stated in n. 6, even after the potential conviction for the misdemeanor offense had been erased by Zuziak's completion of the supervisory period). And it did not take any further brush with the criminal law to cause Zuziak to suffer harm from the Sheriff's dereliction—on the contrary, here is what FAC ¶¶ 26–28 set out:

> 26. On or about August 21, 1993, Mr. Zuziak was stripping the floors at the Medinah Baptist Church in Medinah, Illinois. He saw some suspicious cars in the parking lot and called the police.

> 27. The Roselle police came and asked Zuziak for his identification. They then informed him he had a warrant out for his arrest which was entered in the Cook County Sheriff's Computer System.

> 28. Zuziak was transported to the Streamwood Police Station and locked up for approximately three hours until his father came down to the police station with a copy of the quash and recall order.

As stated earlier, that episode (as outrageous as it was) *still* did not eliminate the problem. In October 1994 (more than another year later) Zuziak's warrant was *still* listed as active in the Sheriff's computer system—it took action in the form of a direction from the Sheriff's lawyer to eliminate the warrant (as already pointed out, a direction given only after Zuziak's identity had been disclosed via the FAC). Most importantly

---

6. In fact the charged misdemeanor resulted in the imposition of a one-year supervisory period after Zuziak entered a guilty plea (*id.* ¶ 24), and supervision was terminated on June 17, 1993 (*id.* ¶ 25). It is worth noting (though it is not necessary for the current disposition) that under Illinois law the successful completion of a period of supervision does not result in a *conviction (People v. Schuning,* 106 Ill.2d 41, 48, 86 Ill.Dec. 922, 925, 476 N.E.2d 423, 426 (1985); *People v. Bushnell,* 101 Ill.2d 261, 78 Ill.Dec. 146, 461 N.E.2d 980 (1984)), and it actually creates a right to expunge the *arrest* record after some further time has elapsed (*id.;* 730 ILCS 5/5–6–3.1(f)).

for present purposes, however, Zuziak's experience graphically illustrates the constant risk to class members that is created by the Sheriff's constitutional violations: Class members actually face the prospect of (and have actually suffered the reality of) their arrest and detention not just for their own future violations of the criminal law, or for future charges of such violations, but for their being perfectly law-abiding citizens—for example, for reporting *other* matters and *other* possible criminal activity to the police.

Hence in sharp contrast to the numerous cases that have found a lack of standing in the attenuated scenarios confronted by the courts in those cases, here Zuziak's presence in this litigation has not only shown a prima facie case of constitutional deprivation but has also demonstrated that the potential of future harm is not just a speculative hypothetical-built-on-a-hypothetical possibility,[7] but is rather a reality that can at any time impact on any of the numerous class members who have done nothing to bring harm on themselves—and that has indeed so impacted named class member Zuziak. As already indicated, no case adduced by either litigant has addressed the Article III question in that context.

This Court therefore sent its able law clerk Reid Muoio, Esq. on a hunt for any authority that had dealt with a situation containing the ingredients that to this Court appeared meaningfully different from those that had produced *O'Shea, Lyons* and their progeny. And that search quickly uncovered a startlingly parallel precedent from the Ninth Circuit, *LaDuke v. Nelson*, 762 F.2d 1318 (9th Cir.1985). Indeed, *LaDuke* so convincingly confirms the analysis that this Court had thought appropriate in the unusual context presented here—not only the existence of a certified class but also the confirmed exposure of class members to constitutional injury through perfectly innocent conduct, without any contingency of again running afoul of the criminal justice system—that it is worth quoting at length (*id.* at 1324, 1325–26 (some citations and footnote omitted)):

The first difference between *Lyons* and this case lies in the respective district court findings on the likelihood of recurrent injury. The district court in *Lyons* made no finding of likely recurrence, *Lyons,* 461 U.S. at 110 n. 9, 103 S.Ct. at 1669 n. 9, while the district court in this case made a specific finding of likely recurrence. Second, the district court in this case explicitly found that the defendants engaged in a standard pattern of officially sanctioned officer behavior, violative of the plaintiffs' constitutional rights. Conversely, the *Lyons* opinion expressly noted the absence of any written or oral pronouncements by the Los Angeles Police Department sanctioning the unjustifiable application of the chokehold and pointed to the absence of "any [record] evidence showing a pattern of police behavior" suggestive of an unconstitutional application of the chokehold. *Id.* 461 U.S. at 110 n. 9, 103 S.Ct. at 1669 n. 9. The Supreme Court has repeatedly upheld the appropriateness of federal injunctive relief to combat a "pattern" of illicit law enforcement behavior.

\*        \*        \*        \*        \*        \*

[*LaDuke* 's third distinguishing feature is not present in this case, but it is obviously less significant than the other factors dealt with in this quotation]

\*        \*        \*        \*        \*        \*

The fourth and final feature which distinguishes this case from *Lyons* and *O'Shea* is the fact that the plaintiffs constitute a certified class under Federal Rule of Civil Procedure 23(b)(2). For standing purposes, this Court's inquiry must focus on the standing of the *class* to seek equitable relief. *See Sosna v. Iowa,* 419 U.S. 393, 399, 95 S.Ct. 553, 557, 42 L.Ed.2d 532 (1975) ("When the District Court certified the propriety of the class action, the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by appellant.").

---

**7.** Multiplying those hypothetical odds, like any multiplication of fractions, quickly produces a much smaller fraction—one that, as posed in *Lyons,* becomes so small that the absence of a

justiciable case or controversy (or, to put it in other terms, the absence of Article III standing) is entirely obvious.

Standing, however, is a jurisdictional element that must be satisfied prior to class certification. While the fact of certification will preserve a class's standing even after the named individual representatives have lost the required "personal stake," *see id.* at 399, 95 S.Ct. at 557, certification is not sufficient in itself to bestow standing on individuals or a class who lacked the requisite personal stake at the outset. The Supreme Court has held that, under the analogous doctrine of mootness, the "personal-stake requirement relat[ing] to the first purpose of the case-or-controversy doctrine" is met in class actions simply by class certification notwithstanding the subsequent loss of a "personal stake" by the class representative. *United States Parole Commission v. Geraghty,* 445 U.S. 388, 400, 100 S.Ct. 1202, 1210, 63 L.Ed.2d 479 (1980). The *Geraghty* court, noting it was following precedent which had eroded the "strict, formalistic perception of Article III," *id.* at 404 n. 11, 100 S.Ct. at 1213 n. 11, applied a "flexible" approach in concluding the personal stake necessary to satisfy Article III's case or controversy requirement is satisfied by the class representative's cognizable interest in the certification decision. *Id.* at 404, 100 S.Ct. at 1212. This "personal stake" in the certification decision survives the mootness of the named plaintiffs' claims. *Id.* at 403, 100 S.Ct. at 1212.

Although mootness and standing are separate justiciability requirements, they share the component of a necessary "personal interest" in the outcome of the litigation. *See Geraghty,* 445 U.S. at 397, 100 S.Ct. at 1209. "The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Geraghty,* 445 U.S. at 397, 100 S.Ct. at 1209 (quoting Monaghan, *Constitutional Adjudication: The Who and When,* 82 Yale L.J. 1363, 1384 (1973)). Of course, as class representatives, by definition, the named plaintiffs can prosecute only the class claims. Accordingly, the standing inquiry on the merits of plaintiffs' case is directed to whether the class has standing—the necessary personal interest—to raise their constitutional claim for injunctive relief. The evidence presented at trial reveals that the plaintiff class faces a credible threat of recurring injury.

Each of the four distinguishing features described above supports the conclusion that the class has standing under Article III as interpreted by *Lyons.* The systematic pattern finding of the district court, the official INS policy for the conduct of ranch checks, and the district court's finding of likely recurrence all reinforce the reality and immediacy of the plaintiffs' constitutional claims. Unlike *Lyons,* the members of plaintiff class do not have to induce a police encounter before the possibility of injury can occur. *See Lewis v. Tully,* 99 F.R.D. 632 (N.D.Ill.1983). The class members are subject to constitutional injury based on the completely innocent behavior of residing in migrant farm housing. Their grievances are general only to the residents of farm housing in the Spokane Sector. Members of the class have repeatedly suffered personal injuries in the past that can fairly be traced to the INS's standard ranch and farm practices. Class members have been and will continue to be aggrieved by the defendants' unconstitutional pattern of conduct in contravention of the Fourth Amendment. The equitable relief sought by the plaintiff class is both efficacious and responsive to the individual interests of class members and the certified class.

Again the factors that separate this case from those cited by the Sheriff—factors that are not limited to the existence of a certified class here—make it a near kin of *LaDuke,* which appears to be the only Court of Appeals decision to have analyzed and ruled upon a constitutionally comparable situation. This Court finds that the distinctions discussed in this opinion are jurisprudentially significant, and it therefore holds that the cases on which Sheriff Sheahan seeks to rely are not authority for dispatching the class' claim for injunctive relief on Article III case or controversy or standing grounds. It will maintain that position unless and until directed otherwise by a court of review. Sheriff

Sheahan's motion to dismiss FAC Count I is denied.

