THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RUSSELL WILLIAMS, Defendant-Appellant.

First District (4th Division)    No. 1—92—3448

Opinion filed August 31, 1995.—Rehearing denied September 27, 1995.

Michael J. Pelletier and Ann C. McCallister, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Theodore F. Burtzos, Jon J. Walters, and Kevin Simon, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAHILL delivered the opinion of the court:

We review a claim of ineffective assistance of counsel based upon the failure to tender a jury instruction in a criminal case and, in the alternative, that the supreme court decision in *People v. Brocksmith* (1994), 162 Ill. 2d 224, 642 N.E.2d 1230, mandates reversal. We affirm.

Defendant was convicted after a jury trial of first degree murder and attempted first degree murder. He was sentenced to 45 years in

the penitentiary for murder and a concurrent sentence of 30 years for attempted murder.

Charles Barron testified at trial that he was a Blackstone street gang member. He said that on August 23, 1990, he and his friend Leon Allen drove to the 5100 block of South Paulina in Chicago, Illinois. Barron got out of his car and started to talk to a man named James Dilliard, a member of a rival gang, the Gangster Disciples. As Barron was talking with Dilliard, he saw defendant Russell Williams and two other rival gang members, Nelson Hannon and Dwayne Elex, approach. The men exchanged gang handshakes with Dilliard.

Barron then saw Williams, Hannon, and Elex pull guns out of plastic bags they were carrying. Barron saw the defendant point a gun in his direction and fire. This shot hit Barron in the face. Barron sought cover under his car as the three men continued to fire. Barron was also hit once in each leg. After firing 10 to 12 shots, the three men fled.

Barron testified that he then came out from under his car. He saw Allen in the passenger seat bleeding. Allen told Barron that he had been shot. Barron drove to the 5300 block of South Marshfield and called for an ambulance. Barron and Allen were taken to a hospital where Allen died from his injuries. Barron also testified that neither he nor Allen was armed. Barron identified all three assailants in photo arrays and identified the defendant in a lineup.

Jermaine Wilson testified that he is a Gangster Disciple. He said that on August 23, 1990, he was on his porch at 5134 South Paulina when defendant Williams, along with Hannon and Elex, walked by. The group exchanged gang handshakes and one of the three men said: "We gonna get this [expletive]." Wilson said he saw the three men walk down the street toward Barron and Dilliard. He saw defendant pull out a gun and shoot at Barron, who took cover under a car. He said that neither Allen nor Barron had guns and that defendant was the only shooter. After defendant fired five shots, he and the other men ran. Barron got off the ground and drove away.

James Dilliard testified that he is a Gangster Disciple. He said that on August 23, 1990, he was at 5119 South Paulina when Barron drove up in a car. Barron got out of the car and began to talk with Dilliard. Allen stayed in the car. As Dilliard and Barron were talking, defendant Williams, along with Hannon and Elex, approached carrying plastic bags. They all exchanged gang handshakes.

Dilliard said that he continued to talk to Barron after the three other men arrived. Dilliard then told Barron to go home and both Barron and Dilliard started to leave. He then heard gunshots, saw Barron shot, and saw defendant with a gun. Dilliard testified that he

never saw Barron or Allen with a gun and that after the shooting Williams, Hannon, and Elex fled. Dilliard then saw Barron limp to his car and drive away.

Patricia Woods testified for the defense. She said that on August 23, 1990, she was on the steps of her apartment at 5119 South Paulina, where she observed Barron and Dilliard talking on the street. She said that defendant Williams came by with Hannon and Elex. Williams said that they were going to the laundromat. As the group approached Barron and Allen, Barron nodded to Allen in the car and pulled a gun from his waist. Defendant then pulled out a gun and shot Barron. She saw Allen reach for a gun and then saw Allen shot.

Defendant testified that he was on his way to a laundromat on August 23, 1990, when he came across Barron and Allen. When defendant was 10 feet from Barron, he saw Barron nod to Allen, reach for his waist band, and remove a gun. Defendant then drew his gun and fired about three or four times. Allen also pulled out a gun. After shooting Barron, defendant fired at Allen. Defendant denied talking to Jermaine Wilson, but admitted talking with James Dilliard and carrying a plastic bag. Defendant also said that neither Barron nor Allen fired a shot. After the shooting, defendant ran home.

Defendant raised the following issues in his brief: whether defendant was denied effective assistance of counsel when his attorney failed to tender a jury instruction on the lesser included offense of second degree murder; and whether the State's request that defendant demonstrate a gang signal to the jury during cross-examination and the State's remarks in closing argument denied him a fair trial.

While this case was pending and before oral argument the supreme court decided *People v. Brocksmith* (162 Ill. 2d 224, 642 N.E.2d 1230). Defendant filed a motion to cite *Brocksmith* as additional authority and a memorandum in support. We allowed the motion.

Defendant's trial counsel in *Brocksmith* tendered an instruction on a lesser included offense which was barred by the statute of limitations. The jury acquitted the defendant of the principal offense, but convicted him of the lesser included offense. Defendant appealed, arguing that the offense he was convicted of was not a lesser included offense. Defendant also filed a petition for post-conviction relief which was denied. In his petition for post-conviction relief defendant filed affidavits from both himself and trial counsel which asserted that he was not consulted in the decision to tender an instruction on the lesser included offense. (*People v. Brocksmith* (1992), 237 Ill. App. 3d 818, 822, 604 N.E.2d 1059, 1062.) This court consolidated the appeals and found trial counsel had been ineffective for submitting an instruc-

tion on an offense without informing the defendant that the statute of limitations had run on the offense. "The court further found that because the lesser offense of deceptive practices was barred by the statue of limitation, remand for a new trial was inappropriate. Accordingly, the appellate court dismissed the case without remanding to the trial court." (*Brocksmith*, 162 Ill. 2d at 227, 642 N.E.2d at 1231.) The State then appealed.

The supreme court, on review of the post-conviction petition, affirmed the disposition, but on different grounds. It held that the ultimate decision to tender a lesser included offense belonged to the defendant. (*Brocksmith*, 162 Ill. 2d at 230.) The court concluded "[b]ecause we base our decision on this ground, we need not consider the appellate court's finding that the failure to discuss with defendant the statute of limitations on [the lesser included offense] constituted ineffective assistance of counsel." *Brocksmith*, 162 Ill. 2d at 230, 642 N.E.2d at 1233.

Defendant asserts in his motion and memorandum that the holding in *Brocksmith* controls the outcome of this case. We cannot agree. The record before us is inconclusive on the issue that controlled in *Brocksmith*: who made the ultimate decision not to tender the instruction on a lesser offense. The record here indicates that the day before this case went to the jury a tentative decision had been made to submit the instruction. The next day, the following exchange occurred on the record in open court outside the presence of the jury with defendant present:

> "THE COURT: Let the record reflect that, in fact, there was consultation yesterday between the Court, State, Defense and jury that [defense counsel] at that time was going to request a second degree murder instruction in light of the weight and presumption of the evidence. I am informed now that [defense counsel] has made a strategic decision to not include that, is that correct?
>
> [DEFENSE COUNSEL]: That's correct."

Defendant contends that this exchange makes it clear that defense counsel made the decision to withdraw the instruction. We disagree.

The supreme court began its discussion of the *Brocksmith* case with the statement: "It is not contested here that defense counsel, rather than defendant, made the ultimate decision to tender an instruction on the lesser included offense ***." (*Brocksmith*, 162 Ill. 2d at 227, 642 N.E.2d at 1231.) The court's statement was supported in the record, not only by defense counsel's affidavit, but by an affidavit of the defendant in which he claimed that he was not asked to make a decision on the instruction and that he would not have agreed to submit it had he been asked. *Brocksmith*, 237 Ill. App. 3d. at 822, 604 N.E.2d at 1062.

■ We have nothing comparable in our record. The appellant bears the responsibility for preserving an issue for review. (*People v. Smith* (1985), 106 Ill. 2d 327, 478 N.E.2d 357.) We will not assume, as the defendant urges, that the silence of the defendant, coupled with the trial court's characterization of the decision as a strategic one made by defense counsel, is conclusive. We could just as well assume from this record that trial counsel consulted fully with his client and assessed the risks of tendering or not tendering the instruction, and that the defendant made the ultimate decision after weighing his lawyer's advice. That is what *Brocksmith* requires.

We are left with the question of ineffective assistance of counsel and again confront a record from which the question cannot be answered. If the record showed that the ultimate decision not to submit the instruction was made as a matter of trial strategy by trial counsel, we would reverse under the holding in *Brocksmith* without reaching the inefficiency issue. If the record revealed that the decision was made by the defendant, but that the decision would not have been made but for the ineffective assistance of counsel, we could, perhaps, even after *Brocksmith*, address the issue. This record does not support either alternative.

■ Defendant also argues that the State made three improper statements during closing argument which diminished the presumption of innocence and misstated the law. The record reveals that the defendant failed to object to the statements at trial and failed to raise them in his post-trial motion.

A defendant waives an issue for appeal unless he objects to the alleged error at trial and raises the issue in his post-trial motion. (*People v. Guajardo* (1994), 262 Ill. App. 3d 747, 636 N.E.2d 863.) He cannot preserve issues of improper closing argument if they are not identified in defendant's post-trial motion. *People v. Buchanan* (1991), 211 Ill. App. 3d 305, 570 N.E.2d 344.

Nor are the issues reviewable under the plain error doctrine. The plain error exception is applied when the evidence is closely balanced and the errors cause a serious injustice, or where the error denies defendant a right to a fair trial. (*People v. Carlson* (1980), 79 Ill. 2d 564, 576, 404 N.E.2d 233.) Here the evidence was not closely balanced, the errors complained of do not rise to the level of serious injustice, nor did they deny defendant a fair trial.

■ Defendant argues next that he was denied a fair trial when the prosecutor requested that the defendant demonstrate his gang's handshake to the jury. Defendant cites *People v. Hope* (1986), 116 Ill. 2d 265, 508 N.E.2d 202, and *People v. Schuning* (1985), 106 Ill. 2d 41,

476 N.E.2d 423, in support of his argument. Both of these cases are distinguishable.

The prosecutor in *Hope* referred to surviving family members of the victim in opening statements, elicited testimony about the family from the victim's widow and another witness, and referred to the surviving family members in closing argument. Over defense counsel's objection, a photograph of the family was also made part of the exhibit package made available to the jury during deliberations.

The court in *Hope* said that " 'the irrelevancy and highly prejudicial nature of such evidence is so well established, that it [is] the duty of the court in a murder case to [refuse] it [the evidence] on its own motion.' " (*Hope*, 116 Ill. 2d at 275, 508 N.E.2d at 206, quoting *People v. Bernette* (1964), 30 Ill. 2d 359, 372, 197 N.E.2d 436.) The court also held that repeated references to the victim's surviving family members "was an improper appeal to the emotions of the jurors." (*Hope*, 116 Ill. 2d at 277, 508 N.E.2d at 207.) Here the defendant was asked to demonstrate a gang handshake. Gang affiliation was part of earlier testimony which included references to and demonstrations of the gang's handshake. Gang members from both sides testified and identified themselves as gang members. The record reveals that the defendant's gang affiliation was part of his defense theory. The defendant's demonstration of his gang's handshake was not an improper appeal to the emotions of the jury or prejudicial to the defendant.

Defendant also cites *Schuning* for the contention that the crucial issue of defendant's credibility was undermined by the State asking defendant to demonstrate the gang's handshake. The improper impeachment complained of by the defendant in *Schuning* was a reference to two former convictions improperly admitted into evidence. Here the defendant's gang membership and handshake greeting were known to the jury before defendant testified and were not used for impeachment purposes, but as demonstrative evidence.

The decision to admit demonstrative evidence lies within the sound discretion of the trial judge. (*People v. Smith* (1992), 241 Ill. App. 3d 365, 610 N.E.2d 91.) A court will not overturn a conviction unless an abuse of that discretion results in prejudice to the defendant. (*Smith*, 241 Ill. App. 3d 365, 610 N.E.2d 91.) We believe the trial court did not abuse its discretion in allowing the defendant, over objection, to demonstrate his gang's handshake.

Affirmed.

HOFFMAN, P.J., and THEIS, J., concur.